United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Claude Oster,                                                    Case No. 08-64912-R
                          Debtor.                                Chapter 7
_____/

Clarkston State Bank,
                    Plaintiff,

v.                                                               Adv. No. 09-4315

Claude Oster,
                    Defendant.
_____/


<u>Opinion Denying Defendant's Motion for Summary Judgment</u>

I

  On December 5, 2005, the plaintiff, Clarkston State Bank ("the Bank"), entered into a loan

agreement with Polyclinic Assoc., P.C.  The loan was personally guaranteed by the debtor, Claude

Oster.  Pursuant to the terms of the loan, Polyclinic could borrow up to $600,000.

  On September 24, 2006, the Bank issued a revolving line of credit to Oster in the amount of

$750,000.

  Oster defaulted on the guaranty and the line of credit loan, prompting the Bank to file suit

against Oster in Oakland County Circuit Court.  In September 2008, a judgment was entered against

Oster in the amount of $835,795.69, and against Oster and Polyclinic, jointly and severally, in the

amount of $554,531.30.

  On October 10, 2008, Oster filed for chapter 7 relief.  On February 20, 2009, the Bank filed

this adversary proceeding seeking a determination of dischargeability of debt pursuant to 11 U.S.C.

§ 523(a)(2)(A) and (B).  The Bank alleges that Oster made oral and written misrepresentations to induce the Bank to enter into the loan agreements.  The Bank alleges that Oster represented that he had $4,000,000 in marketable securities, when in fact the securities were owned by Oster's wife.  Further, the Bank alleges that Oster represented that he had a $1,350,000 life insurance policy payable to the Bank, when in fact the policy was payable to a different entity.

Oster now moves for summary judgment.

## II.

Oster contends that he did not represent to the Bank that he had $4,000,000 in marketable securities.  He contends that the loan documents contained an affirmative covenant that he would not let his marketable securities fall below $4,000,000.  This, Oster argues, does not constitute a representation.  It is, at most, a promise to act in the future.  Oster also asserts that he did not represent that he had a $1,350,000 life insurance policy.  He states that there was an affirmative covenant in the loan agreement that he would attempt to secure a life insurance policy, not that he already had one.

Oster acknowledges that the financial statements he provided to the Bank mistakenly stated that he owned $8,400,000 in marketable securities jointly with his wife.  Oster admits that his wife is actually the sole owner of the securities.  However, Oster argues that even if he did own the securities jointly with his wife, the Bank should have known that such joint property is not subject to the debts of one party.  Therefore, Oster argues that any reliance by the Bank was not reasonable or justifiable.

Oster also asserts that he produced to the Bank a number of printouts from Merrill Lynch which indicated that Oster's wife or the Oster Family Trust were the owners of all of the securities,

2

other than a $5,000 IRA.

Oster provided an affidavit in support of his motion for summary judgment.

The Bank contends that the financial statements Oster provided in connection with the loans indicated that over $8,000,000 in marketable securities were held jointly by Oster and his wife. The Bank states that it believed that the joint assets were held 50/50. That is why, the Bank argues, they required Oster to maintain a minimum value of $4 million in marketable securities.

The Bank also contends that Oster orally represented that he had a life insurance policy naming the Bank as the beneficiary.

The Bank provided the affidavit of Donald Bolton, an officer of the Bank, in support of its response. Bolton states that Oster represented to him that he had $4 million in liquid assets to support his loan request. Bolton also states that Oster told him he had a life insurance policy in place that named the Bank as beneficiary. Bolton states that Oster showed him his check register reflecting payment of the initial insurance premium. Bolton states that after the defaults on the loans, he discovered that Private Bank was actually the beneficiary of Oster's life insurance policy.

III.

11 U.S.C. § 523(a)(2)(A) excepts from discharge a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

In *Rembert v. AT & T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277 (6th Cir.

3

1998), the court stated that under § 523(a)(2)(A), the creditor must prove the following elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Id.* at 280-81 (footnote omitted) (citing *Longo v. McLaren* (*In re McLaren*), 3 F.3d 958, 961 (6th Cir. 1993)).

11 U.S.C. § 523(a)(2)(B) provides, in relevant part:

> (a) A discharge under section 727 . . . does not discharge an individual debtor from any debt-
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by-
> >
> > (B) use of a statement in writing-
> >
> > (I) that is materially false;
> >
> > (ii) respecting the debtor's or an insider's financial condition;
> >
> > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> >
> > (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B).

Oster essentially makes two arguments in support of his motion for summary judgment. First, he contends that he did not make any misrepresentations. Second, even if he did, he argues that any reliance by the Bank was neither justifiable nor reasonable.

The Court concludes that there are genuine issues of material fact as to whether Oster made

4

false representations to the Bank. Oster acknowledges that the financial statements prepared by his CPA falsely listed Oster and his wife as joint owners of a large amount of securities, when in fact Oster's wife owns them individually. Further, the affidavit of Donald Bolton from the Bank indicates that Oster told him he had an insurance policy in place naming the Bank as a beneficiary. There is also an issue of fact as to whether the covenants in the loan documents constitute representations.

Oster's second argument is that even if the Bank believed that he was a joint owner of the securities, the Bank should have known that the securities could not be attached by Oster's sole creditors. Therefore, Oster argues, the Bank's reliance was not reasonable. Oster relies upon Michigan's statutory presumption that certain types of personal property owned by spouses are held as tenants by the entirety. M.C.L. § 557.151. Such property is exempt from execution under a judgment entered against only one of the spouses. M.C.L. § 600.6023a.

M.C.L.A. § 557.151 provides:

> Sec. 1. All bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness hereafter made payable to persons who are husband and wife, or made payable to them as endorsees or assignees, or otherwise, shall be held by such husband and wife in joint tenancy unless otherwise therein expressly provided, in the same manner and subject to the same restrictions, consequences and conditions as are incident to the ownership of real estate held jointly by husband and wife under the laws of this state, with full right of ownership by survivorship in case of the death of either.

M.C.L.A. § 557.151.

In *DeYoung v. Mesler*, 130 N.W.2d 38 (Mich. 1964), the court concluded that spouses hold a debenture as tenants by the entirety unless an intent to do otherwise is affirmatively expressed. *See also Comm'r of IRS v. Hart*, 76 F.2d 864 (6th Cir. 1935):

5

> In Michigan, the common-law rule that a conveyance to husband and wife creates a tenancy by the entirety has persisted except in respect to conveyances explicitly indicating that some other kind of tenancy is intended. Even the qualifying phrase "as joint tenants," while sufficient to create a joint tenancy in a conveyance to grantees generally, does not avoid the creation of an estate by the entirety when the grantees stand in the marital relation to each other.

*Id.* at 865.

Here, the financial statement prepared by Oster's accountant incorrectly indicated that the stock was "jointly owned." The question then becomes whether it was reasonable for the Bank to rely on this false statement, given the statutory presumption that such stock is owned as tenants by the entirety, not subject to the sole debts of Claude Oster.

A creditor's "reliance [is] 'reasonable' under § 523(a)(2)(B) only if a prudent person in the creditor's position would have relied on the misrepresentation." *FirstMerit Bank, N.A. v. Green* (*In re Green*), 240 B.R. 889, 893 (Bankr. N.D. Ohio 1999) (citing *Field v. Mans*, 516 U.S. 59, 77, 116 S. Ct. 437 (1995)).

> Whether a creditor's reliance was reasonable is a factual determination to be made in light of the totality of the circumstances. Among the circumstances that might affect the reasonableness of a creditor's reliance are: (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*BancBoston Mortgage Corp. v. Ledford* (*In re Ledford*), 970 F.2d 1556, 1560 (6th Cir. 1992) (citations omitted).

> In the Sixth Circuit, . . . the "reasonableness" requirement is not a rigorous one, "but rather is directed at creditors acting in bad faith."

> *Woolum*, 979 F.2d at 76 (quoting *Martin v. Bank of Germantown* (*In re Martin*), 761 F.2d 1163, 1166 (6th Cir.1985)). The creditor must only establish "its reliance in fact, although its claims to reliance cannot be so unreasonable as to defeat a finding of reliance in fact." *Woolum*, 979 F.2d at 76 (quoting *Matter of Garman*, 643 F.2d 1252, 1258 (7th Cir.1980)). Furthermore, in assessing the reasonableness of the reliance, the court should refrain from a subjective evaluation of the creditor's lending policy and practices and should not base its decision on whether the court, in the creditor's place, would have extended the loan. *Ledford*, 970 F.2d at 1560; *Woolum*, 979 F.2d at 76.

*Buckeye Ret. Co., LLC v. Kakde* (*In re Kakde*), 382 B.R. 411, 423 (Bankr. S.D. Ohio 2008).

Here, the Court cannot conclude as a matter of law that the Bank's reliance was unreasonable. Accordingly, Oster's motion for summary judgment is denied.

Not for Publication

**Signed on June 30, 2009**

**/s/ Steven Rhodes**
_____

**Steven Rhodes**
**United States Bankruptcy Judge**
